Russell BERGER v. STATE of Arkansas

CR 00-210                                    36 S.W.3d 286

Supreme Court of Arkansas
Opinion delivered January 25, 2001

---

*Kenneth G. Fuchs*, for appellant.

*Mark Pryor*, Att'y Gen., by: *David R. Raupp*, Ass't Att'y Gen., for appellee.

Tom Glaze, Justice. Appellant Russell Berger was convicted by a jury of two counts of rape of a five-year-old boy, D.C. He received two consecutive life sentences. Although he does not question the sufficiency of the evidence which led to his convictions, Berger does urge on appeal that the trial court erred (1) in allowing State witnesses to testify concerning Berger's proficiency in using computers; 2) in permitting the State to introduce pictures of his computer and its hardware and software; (3) in failing to grant a mistrial when the prosecutor made reference before the jury to the words "pornographic pictures"; and (4) in

allowing two boys, T.G. and D.M., to testify that, prior to Berger's sexual abuse of D.C., he had committed homosexual acts on them.

The significance of Berger's points dealing with his computer proficiency and the pictures of his computer operation introduced at trial is grounded on the manner and means Berger used to induce D.C. to join in having sexual conduct. D.C. testified at trial that Berger "touched his privates, put his mouth on my front part . . . a whole bunch, and put his front part in my back part." D.C. added that Berger took "bad pictures of me, and he put them on his computer." He also averred that Berger would sometimes get pictures of other people on the Internet.

█ While the State had D.C.'s testimony regarding how Berger utilized his computer when he sexually abused D.C., the State was unable to access Berger's password to his computer to find any pictures that he may have entered. The State did offer testimony through four other witnesses that depicted Berger as a person who possessed a special expertise in operating a computer. Although Berger found such testimony objectionable, he waited until the State's third witness, Conway Police Department Detective Chris Lewis, to interpose his objection. In fact, Berger's objection came long after both D.C.'s mother, Ronna C., and Lewis had already identified pictures and offered related testimony describing Berger's computer, its hardware, and software. The State's first witness, Crystal Rhodes, Ronna's friend, also had testified without objection as to Berger's special computer knowledge and that D.C. told her Berger had taken a picture of him and put it on the computer.[1] This testimony and evidence regarding Berger's computer acumen and the photos of his computer do not appear to contain prejudicial material,[2] but even if they did, Berger failed to preserve his objection to such evidence because he did not make an objection at the first opportunity. See Hale v. State, 343 Ark. 62, 31 S.W.3d 850 (2000).

Next, Berger asserts the trial court should have granted him a mistrial when the prosecutor interjected a remark to which Berger objected. The prosecutor's remark was made after State witness,

---

[1] Berger did make an objection, without obtaining a ruling, that Rhodes appeared to have no personal knowledge that Berger took the pictures; however, Rhodes then averred without objection that D.C. had told her of the pictures.

[2] The trial judge did exclude from evidence those pictures of Berger's computer system in which condoms were also depicted.

Aaron Hoyt, testified that Berger was "pretty knowledgeable" with computers and that Berger had said that he had a collection of pictures on his computer. Hoyt also stated that Berger had asked him to delete certain files to which Hoyt had access. Hoyt said that he complied without looking at the contents. The following colloquy reflects the testimony Berger's counsel elicited from Hoyt, which related to Hoyt's having deleted Berger's files and which prompted the prosecutor's statement:

> Q: You don't have any idea or anything about this encryption what was on his files or anything of the sort, do you?
>
> A: No, I don't [know] what the contents of it were.
>
> Q: Okay. And you don't know whether the IRS is after him for — for his financial records could be encrypted, correct?
>
> A: I didn't ask. I didn't want to know the contents but —
>
> Q: All right. The truth of the matter is a lot [of] people encrypt their files, do they not?
>
> A: I'm sure they do, yes.
>
> Q: OK.
>
> A: I — I myself don't but I'm —
>
> Q: Right.
>
> A: — sure there are several that do.
>
> Q: *Right? Not everybody is an illegal pedophile or — or running from the IRS or anything like that, correct?*
>
> A: *That's correct.*
>
> Q: *Okay. So, there is nothing abnormal about what the prosecutor is asking you, is there?*
>
> PROSECUTOR: *Your honor, I would object if there's pornographic pictures on that, you know —*
>
> DEFENSE COUNSEL: *Whoa, now, that's the first time we've heard that term. Can we approach?* (Emphasis added.)

Upon defense counsel's request, the trial court admonished the jury that they were to "disregard the statement made by [the prosecutor] regarding pornographic pictures."

We initially point out that, although Berger's counsel exclaimed that the prosecutor's mention of the term "pornographic pictutes" was new, he was in error. In fact, defense counsel, in his earlier cross-examination of D.C.'s mother, Ronna C., had asked Ronna whether D.C. had been in a pornographic situation when Berger had previously taken D.C.'s picture. Thus, it was Berger who first used such terminology. Nonetheless, after defense counsel objected, the trial judge admonished the jury to disregard the prosecutor's remarks. We have held that such an admonition to the jury generally cures a prejudicial statement unless it is so patently inflammatory that justice could not be served by continuing the trial. *Kemp v. State*, 335 Ark. 139, 983 S.W.2d 383 (1998). Moreover, we have repeatedly held that the decision whether to grant a mistrial is a matter soundly within the trial court's discretion, and this court will not reverse in the absence of an abuse of that discretion. *See Davis v. State*, 330 Ark. 501, 956 S.W.2d 163 (1997) (trial court's refusal to grant a mistrial not erroneous, even when prosecutor asked defendant during cross-examination, "How long have you been a pervert?"). Considering the circumstances that occurred here, we conclude the prosecutor's remark does not constitute reversible error.

Finally, Berger urges that error occurred at trial when the judge allowed two boys, who live in Englewood, Colorado, to testify that Berger had molested them in 1996, when he lived and worked in Englewood. Berger then lived in the basement of his employer's house, and the sexual acts to which the boys referred occurred in the basement where Berger also kept his computer. Berger's counsel argued below (and now on appeal) that the boys' testimony should be excluded under Ark. R. Evid. 404(b) as being evidence of other crimes, wrongs, or acts that are inadmissible to prove his character or to show that he acted in conformity therewith. Citing the case of *Mosley v. State*, 325 Ark. 469, 929 S.W.2d 779 (1992), to the trial court, Berger recognized that this court has allowed evidence showing similar acts with the same child or other children when the evidence is helpful in showing a "proclivity toward a specific act with a person or class of persons with whom the accused has an intimate relationship." However, he asserted that such evidence is admissible only when those children are in the same household. In sum, Berger claimed that because the two boys lived in Colorado and not in the same household as D.C., their

testimony was inadmissible. The trial court rejected Berger's argument, and on appeal, we affirm that ruling.

■ The rule Berger advances is referred to as the pedophile exception to Rule 404(b). Rule 404(b)'s provision in its entirety reads as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

We have held that the list of exceptions set out in Rule 404(b) is exemplary and not exhaustive, *Mosley v. State, supra.* We have further stated that testimony is admissible pursuant to Rule 404(b) if it is independently relevant to the main issue — relevant in the sense of tending to prove some material point rather than merely to prove that the defendant is a criminal or a bad person. In recognizing the so-called pedophile exception to Rule 404(b), this court has approved allowing evidence of similar acts with the same or other children in the same household when it is helpful in showing a proclivity for a specific act with a person or class of persons with whom the defendant has an intimate relationship. *Mosley v. State, supra,* citing *Free v. State,* 293 Ark. 65, 732 S.W.2d 452 (1987). The rationale for recognizing this exception is that such evidence helps to prove the depraved sexual instinct of the accused. *Greenlee v. State,* 318 Ark. 191, 884 S.W.2d 947 (1994).

Berger argues on appeal as he did below, that, because the pedophile exception specifically allows evidence only to show "similar acts with the same child or other children *in the same household,*" the trial court erred in allowing T.G.'s and D.M.'s testimonies because the boys did not live either in Berger's household or in D.C.'s household.

■ We note that the language "another child in the same household" contained in the pedophile exception by no means appears in every case where such evidence involving a defendant's prior sexual acts on other children was allowed into evidence. For example, in *Thompson v. State,* 322 Ark. 586, 910 S.W.2d 694 (1995), the court, with no mention of the words "in the same household," stated the rule that evidence of other sexual acts with children is admissible when it tends to show a proclivity toward a

specific act with a person or class of persons with whom the accused has had an intimate relationship. The *Thompson* case further explained that the testimony of other rape victims is relevant in a criminal trial for the rape of an underage victim to show "motive, intent, or plan." *Id.* at 589-590; *see also Jarrett v. State*, 310 Ark. 358, 833 S.W.2d 779 (1992); *Fry v. State*, 309 Ark. 316, 829 S.W.2d 415 (1992).

■ It is also significant that in some cases this court has applied the pedophile exception using the "same household" language to allow a child's testimony relating prior sexual acts even though the victims never lived with defendant. *Hernandez v. State*, 331 Ark. 301, 962 S.W.2d 756 (1998) (testimony allowed regarding a child who spent the night at defendant's home on occasion). In *Greenlee, supra*, for example, evidence was introduced that showed the defendant had four prior convictions for sex-related offenses involving children, but none of those children lived with the defendant; rather, he was only their babysitter. Our court of appeals has also been faced with a situation where the other child victim did not live with the defendant. *Brewer v. State*, 68 Ark. App. 216, 6 S.W.3d 124 (1999). In *Brewer*, the defendant urged the same point argued by Berger here — that, because the other victim did not live in the same household, the pedophile exception did not apply. The court of appeals rejected that argument, noting that the sexual abuse occurred when the victims were "in [Brewer's] care or under his authority" and that this was "sufficient to trigger the pedophile exception." *Id.* at 220. We agree with the rationale and decision in *Brewer*.

We apply the pedophile exception in this case as we did in *Greenlee*, where the accused babysat for the other victims, but did not live with them. In that case, the previous child victims were entrusted to Greenlee's care. In discussing the similarities between Greenlee's earlier sexual offenses and the one at issue on appeal, this court noted the following:

> Appellant committed the prior offenses against young children, just as he was accused of doing in this case, and in committing the prior offenses, he was successful in luring the children into his lair by baby-sitting, just as he was accused of doing in this case. We have long held that such evidence helps prove the depraved sexual instinct of the accused. *Williams v. State*, 103 Ark. 70, 146 S.W. 471 (1912).

*Greenlee*, 318 Ark. at 197.

■ Likewise, in the present case, there are numerous similarities between the earlier instances of sexual abuse in Colorado and the rape of D.C.: (1) in both cases, he lived in close physical proximity to the children and was apparently able to gain their parents' trust (in Colorado, Berger lived in the household of his employer, who was a business partner of one boy's mother and a scout leader with the other boy's father; here, he lived with the victim's mother); (2) all of the children were entrusted to Berger's sole care, and they were alone with him on numerous occasions; (3) Berger used his computer with all three boys, letting them play games on it and showing them pornography on it. Thus, as in *Greenlee*, there was evidence that these two boys were placed into Berger's care by friends and Berger took advantage of that period of entrustment to induce the boys to join in sexual acts, including those consummating in rape. Therefore, we conclude that this is an appropriate case for the application of the pedophile exception, because the testimony of the two boys from Colorado was relevant to show Berger's proclivity toward sexual acts with children, as well as his motive, intent, or plan. *See Thompson, supra.*

■ We must examine this challenge to the evidence as we do all others — that is, under an abuse of discretion standard. Here, we hold that the trial court did not abuse its discretion in permitting these boys' testimony under the pedophile exception, because their statements revealed Berger's motive, intent, and plan involving D.C. by showing his proclivity for a specific act with a person or class of persons with whom he had an intimate relationship. *See Hernandez*, 331 Ark. at 306.

Berger has failed to demonstrate that any of the evidentiary rulings he challenges, or the court's refusal to grant a mistrial, amounted to an abuse of the trial court's discretion. Because he has not made such a showing, his convictions must be affirmed.

The record has been examined pursuant to Ark. Sup. Ct. R. 4-3(h) to ensure that all rulings adverse to Berger have been abstracted; they have, and no additional points appear to merit briefing.