Darrell G. SPENCER *v.* STATE of Arkansas

CR 01-619                                        72 S.W.3d 461

Supreme Court of Arkansas
Opinion delivered April 18, 2002

*Philip C. Wilson*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Katherine Adams*, Ass't Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant Darrell G. Spencer was charged under Ark. Code Ann. § 5-14-103(a)(4) (Repl. 1997) with the rape of his five-year-old stepson, C.S. The State alleged Spencer engaged in sexual intercourse with C.S., who was less than fourteen years of age at the time. Spencer was specifically charged with having inserted his penis into C.S.'s mouth and anus. The State averred that, upon learning of this occurrence, C.S.'s mother called the Child Abuse Hotline and reported that Spencer had molested her son. Spencer was convicted of the charge and sentenced to life imprisonment. Our court has appellate jurisdiction of criminal appeals where life sentences are imposed. *See* Ark. Sup. Ct. R. 1-2(a)(2). Spencer raises three points for reversal, but none has merit.

We first consider Spencer's argument that the trial court erred in denying his motion for directed verdict, claiming the evidence was insufficient to prove rape. Interestingly, Spencer fails to discuss any of the evidence introduced at trial, much less suggest how the State's evidence was deficient. This fact aside, Spencer has failed to preserve this issue.

At the end of the State's case-in-chief, Spencer made a motion for a directed verdict, stating, "At this time I move for a directed verdict on the rape charge. The evidence is insufficient to where a reasonable jury could come back with a guilty finding on this. Therefore, it should be dismissed." The trial court denied the motion. At the conclusion of all of the evidence, Spencer renewed his motion for directed verdict, stating only that "I do need to renew my motion for a directed verdict and also to

renew all the objections that I have for the previously stated reasons." The trial court again denied Spencer's motion.

Ark. R. Crim. P. 33.1(a) states that, "[i]n a jury trial, if a motion for directed verdict is to be made, it shall be made at the close of the evidence offered by the prosecution and at the close of all of the evidence. *A motion for directed verdict shall state the specific grounds therefor.*" (Emphasis added.) Further, Rule 33.1 states, in pertinent part, the following:

> The failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required in subsections (a) and (b) above *will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment. A motion for directed verdict or for dismissal based on insufficiency of the evidence must specify the respect in which the evidence is deficient. A motion merely stating that the evidence is insufficient does not preserve for appeal issues relating to a specific deficiency such as insufficient proof on the elements of the offense.*

(Emphasis added.)

█ █ This court has repeatedly addressed this issue and held that a directed-verdict motion "requires [a] movant to apprise the court of the specific basis on which the motion is made." *Bowen v. State*, 342 Ark. 581, 30 S.W.3d 86 (2000). Clearly, Spencer's motion for directed verdict, stating only that the evidence was insufficient, but not specifying in what respect it was deficient, was not specific enough to preserve the issue for review.

Next, we consider Spencer's assertion that the trial court abused its discretion in refusing to grant his motion *in limine* whereby he sought to exclude evidence of prior sexual acts with other children or of any pending charge of a similar nature. At pretrial hearings on Spencer's motions, the State presented the testimony of two of his daughters, S.S. and D.S., and of his first cousin, Cynthia Brown. S.S., who was almost twelve at the time of the hearing, testified that Spencer lived with her family until she was about five years old and he "made her touch his private areas," and on another occasion, "he stuck his private area in mine . . . and when he got through he squirted white stuff all on my

stomach." S.S. also said that the first of these acts occurred when she was three years old. D.S. testified that "Darrell Spencer touched me in a bad way by touching my pee-pee when I was three years old." The trial court ruled that this was admissible testimony because it fell within the pedophile exception to Ark. R. Evid. 404(b) and "involved similar dynamics." The trial court further ruled that the testimony had more probative value than prejudicial effect.

Just prior to trial, the State also offered the testimony of Cynthia Brown, Spencer's first cousin. Brown was thirty-three years old at the time of the pretrial hearing. She testified that she first had sexual contact with Spencer when she was four or five years old, and he was ten or twelve. She said that she was seven or eight years old when she started sexual intercourse with Spencer; he was fourteen. She related that she continued intercourse with him through her teen years. Brown further averred it had been ten years or longer since she had any contact with Spencer and longer than that since they had sexual contact with one another. Spencer objected to Brown's testimony as being so remote in time that the prejudicial effect would far outweigh any probative value. Spencer also complained that, unlike the present case, Spencer was a minor, not an adult, when some of Spencer's sexual conduct with her occurred. The court ruled that Brown's testimony would be admissible during the trial, because it showed a continuing episode on Spencer's part, and fell within Rule 404(b). The court also found that Brown's testimony was more relevant than prejudicial. At trial, S.S. and Brown testified, but D.S. did not. On appeal, Spencer argues that the trial court's ruling to admit the testimony of S.S. and Brown was error because the evidence was more prejudicial than probative. He asserts that the remoteness in time of these other events should have kept them from being admitted into evidence.

Rule 404(b), dealing with evidence of other crimes, wrongs, or acts, provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, prepara-

tion, plan, knowledge, identity, or absence of mistake or accident.

It is settled that the list of exceptions set out in Rule 404(b) is exemplary and not exhaustive. *Mosley v. State*, 325 Ark. 469, 929 S.W.2d 693 (1996). It is also well established that the rule permits introduction of testimony of other criminal activity if it is independently relevant to the main issue, that is, relevant in the sense of tending to prove some material point rather than merely to prove that the defendant is a criminal. *Id.*

■ ■ In *Mosley*, the defendant was charged with having committed rape and incest against his nineteen-year-old daughter. During the State's case-in-chief, the trial court additionally admitted proof that, eleven years earlier, Mosely had pled guilty to carnal abuse of his six-year-old stepdaughter. The *Mosley* court concluded that evidence of a prior similar offense in cases where the charge involves unnatural sexual acts shows not that the accused is a criminal but that he has a depraved sexual instinct. In addition, in *Thompson v. State*, 322 Ark. 586, 910 S.W.2d 694 (1995), the court held that evidence of other sexual acts is admissible when it tends to show a proclivity towards a specific act with a person or class of persons with whom the accused has an intimate relationship. Stated another way, in *Munson v. State*, 331 Ark. 41, 959 S.W.2d 391 (1998), the court held that when the charge concerns the sexual abuse of a child, evidence of other crimes, wrongs, or acts, such as sexual abuse of that child or other children, is admissible to show motive, intent, or plan pursuant to Ark. R. Evid. 404(b). The admission or rejection of evidence under Ark. R. Evid. 404(b) is left to the sound discretion of the trial court and will not be disturbed absent a manifest abuse of discretion. *Munson*, 331 Ark. at 48.

■ From our review of the evidence before the trial court, it is clear that it did not abuse its discretion in admitting the testimony of S.S. because S.S.'s testimony showed Spencer's proclivity toward incestuous sexual contact with children. Also, evidence shown by S. S.'s testimony demonstrates that Spencer's depraved sexual instinct was not substantially outweighed by the danger of unfair prejudice to Spencer.

Regarding Brown's testimony, Spencer places emphasis on dissimilar facts that, unlike the situations with C.S. and S.S., Spencer's sexual contact with Brown commenced when Spencer was a minor, age fourteen, and it extended to when Brown was seventeen or eighteen years old. However, we conclude that, even if we were to hold that the trial court erred in admitting Brown's testimony, the error was harmless, because the evidence was overwhelming as to Spencer's guilt. *See Abernathy v. State*, 325 Ark. 61, 925 S.W.2d 380 (1996). In this respect, we set out the following evidence presented at trial.

C.S., the five-year-old victim, testified that Spencer "touched me on my body with his pee-pee. He put it in my mouth and peed in it. He put his pee-pee in my butt in the bedroom . . . . When Darrell put his pee-pee in my butt, he washed my butt with a washcloth after that. Darrell put his pee-pee in my butt more than once on different days." This testimony alone constitutes substantial evidence to support Spencer's conviction, since it is well settled that the testimony of a child rape victim alone constitutes substantial evidence to support a rape conviction. *See Miller v. State*, 318 Ark. 673, 887 S.W.2d 280 (1994). However, much more was shown by the State.

C.S.'s mother, for example, said that she had given C.S. a bath, dressed him in pull-ups, boxer shorts, and a t-shirt and put him to bed the night before the rape. The next morning, he was wearing only his pull-ups and they were inside out. She asked C.S. what happened, and he started telling her some things that "horrified her." The mother called SCAN and took C.S. to the Arkansas Children's Hospital where a rape kit was conducted. At the hospital, Dr. Henri-Ann Norman, a pediatric physician at the hospital, conducted a rape kit, and, in examining C.S., the doctor found semen on the child's face, mouth, groin area, and rectum. Kermit Channel, the supervisor at the forensic department at the State Crime Lab, testified that the DNA from the rectal swab from C. S. was consistent with the DNA from Spencer's blood sample. Clearly, the evidence of Spencer's guilt was so overwhelming as to render harmless any error that may have been committed by allowing the introduction of Brown's testimony.

Spencer's last point for reversal is that the trial court abused its discretion by refusing to strike venire-person Sarah Whitworth for cause. During voir dire, Whitworth revealed she had a niece who had been sexually abused, and she added that she had also worked with several young women who had been sexually abused by family members. Whitworth stated she could "set aside these things and decide the case on the testimony and exhibits introduced." When defense counsel inquired, Whitworth stated it would be "very difficult" to put aside her knowledge of the sexual abuse of her relative. Spencer then moved to strike Whitworth for cause. The State responded that Whitworth said she could set aside those experiences and decide the case on the evidence presented. The court then asked Whitworth if she could "tell the court absolutely that you can be fair and impartial and base a decision only on the evidence presented." She said, "I will tell you that I will."

This court has held that an appellant must demonstrate that he was prejudiced by the jury being seated. *Camargo v. State*, 346 Ark. 118, 55 S.W.3d 255 (2001). Further, the court has stated that the decision to excuse a juror for cause rests within the sound discretion of the trial court, and its decision will not be reversed absent an abuse of that discretion. *Bangs v. State*, 338 Ark. 515, 998 S.W.2d 738 (1999). Persons comprising the venire are presumed to be unbiased and qualified to serve, and the burden is on the party challenging a juror to prove actual bias. *Taylor v. State*, 334 Ark. 339, 974 S.W.2d 454 (1998). When a juror states that he or she can lay aside preconceived opinions and give the accused the benefit of all doubts to which he is entitled by law, a trial court may find the juror acceptable. *Id.* Here, the trial court denied Spencer's motion, and we hold that having done so in these circumstances was not an abuse of its discretion. Because Spencer has shown no reversible error, we affirm.

Pursuant to Ark. Sup. Ct. R. 4-3(h), we have reviewed the record and have determined that there are no errors with respect to rulings on objections or motions prejudicial to the appellant not discussed above.

IMBER, J., not participating.